UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

George C. Rogers,                                    Case No. 3:15-cv-2514

        Plaintiff

    v.                                                      MEMORANDUM OPINION

Michael D. Bodenbender,

        Defendant

## I. INTRODUCTION AND BACKGROUND

This matter is before me on the Defendant's motion for judgment on the pleadings (Doc. No. 8), Plaintiff's opposition (Doc. No. 12), and Defendant's reply (Doc. No. 13). For the reasons stated below, the motion is granted.

The following facts are alleged in Plaintiff's complaint[1]:

10. Pursuant to a formal waiver of confidentiality by J.J. Gebers, the following facts may be disclosed.

11. On the afternoon of December 5, 2013 George C. Rogers received a phone call from a former client J.J. Gebers that the police were executing a search warrant at his home in McClure Ohio. [Background. George C. Rogers had preliminarily represented J.J.Gebers for a couple of days years earlier on some drug charges. Since that brief representation George Rogers had been informed by two women and one man related to clients of his, that J.J. Gebers had assaulted on different occasions, all three persons. One of the women had a broken arm she wanted to sue Mr. Gebers. George Rogers could not take the case against a former client but he could and did act to facilitate the transmission of her drug information said woman wished to convey to the local prosecutor, as well as to BCI of Ohio.] Mr. Rogers was not inclined to represent Mr. Gebers pursuant to such facts. Mr. Rogers advised Mr. Gebers that a search warrant did not need immediate investigation. If it was

---

[1] Mistakes in pleadings are usually followed by use of "sic" and then otherwise left as they appear in the original. THE BLUEBOOK: A UNIFORM SYSTEM OF CITATION R. 5.2(C) (COLUMBIA LAW REVIEW ASS'N ET AL. ED., 19TH ED. 2010). As the complaint contains numerous grammatical errors, I have chosen not to implement that rule in this opinion.

improper, or invalid in any way, such argument could be raised at a later date by such counsel that would represent him.

Mr. Gebers advised that he was in Defiance, Ohio and was heading back to McClure but he said he was worried about his girlfriend, Crystal Roberts, and her mother at the house. Since Crystal Roberts was a client Mr. Rogers recently represented, and George Rogers was concerned that if a search warrant was being conducted at the house, and if Crystal was present in the house and drugs were found she could be arrested and/or otherwise need immediate counsel, Mr. Rogers then advised Mr. Gebers that [he] would go to the McClure residence to see what was going on.

12. When Mr. Rogers turned onto one of the streets in McClure he spotted two sheriff's vehicles topped side by side with officers conversing. He drove up and waited, then a cruiser pulled up alongside, he asked "are you executing a search warrant at J.J. Gebers' house?" The deputy said "can't talk with you, you'll have to talk with the County Prosecutor." Mr. Rogers then asked "Has anyone been arrested?", he responded "I can't talk with you you'll have to talk to the County Prosecutor." Mr. Rogers then drove on turning down another street, when a sheriff's deputy drove up and stated that "the Sheriff wants to talk to you" Mr. Rogers then said OK, "are you executing a search warrant of J.J. Gebers house." The Deputy stated a man was seen running out of the back door and a shot was fired. MR. Rogers asked "Has anyone been arrested?" the response was "No". Mr. Rogers told the deputy he would follow him to see the Sheriff.

13. When Mr. Rogers arrived at J.J. Gebers house, he saw four sheriff's vehicles in front of the house, no private vehicles, and no one appeared to be in the home. Sheriff Bodenbender came up to his drivers side window, and stated "Rogers, if you don't get out of here I'm, going to charge you with obstruction of justice." This shocked Mr. Rogers who responded "But Sheriff, you asked for me to come here." He said "Yes I asked you to come to tell you that.", Mr. Rogers then asked "Are you executing a search warrant here." The Sheriff responded about having a call on a domestic dispute and not needing a warrant. Mr. Rogers asked "has anyone been arrested?" The deputy Sheriff nearby stated loudly "He's J.J.'s attorney, if he knows where he is and won't tell us he's obstructing justice." Mr. Rogers started to explain that he couldn't reveal communications with anyone who contacted him whether he represented them or now. Mr. Rogers knowing he couldn't reveal who he heard from , or how he had heard, or what was discussed, did feel he could be helpful by telling what he concluded from whatever information he had, and that was the J.J. Gebers was not in the county. He stated "all I can tell you is that J.J. Gebers isn't in the County" and Mr. Rogers drove off.

14. Apparently, J.J. Gebers was found and arrested later that evening of Dec. 5, 2013. Sheriff Michael Bodenbender apparently got a statement from J.J. Gebers that he hadn't left the County. Without conducting any further investigations and without discussing the matter with the County Prosecutor, the next day Michael D. Bodenbender prepared a felony original complaint of felony obstruction of justice and attested to the complaint on December 6, 2013.

15. Sheriff Bodenbender then personally served the criminal complaint on George C. Rogers the next day Dec. 7, 2013 at Mr. Rogers home and told him "have a nice weekend."

16. The following statement in the police incident report narrated Dec. 6, 2016, and the handwritten complaint of Sheriff Bodenbender are false.

> a. The assertion that George C. Rogers stated he was J.J. Gebers' attorney.  Mr. Rogers never identified himself as J.J. Gebers' attorney.  See facts of conversations above.  It is perhaps understandable that a deputy or sheriff could leap to that conclusion since an attorney is asking questions as to whether they are executing a search warrant at J.J. Gebers house.  Why would he be asking if he weren't J.J. Gebers attorney, but that would merely be a guess.

> b. The assertion that George C. Rogers stated that the police were not to enter the residence without a warrant.  Mr. Rogers never said that "we were not to enter the premises without a warrant."  It is again perhaps understandable that a deputy or the sheriff would leap to the conclusion that since Mr. Rogers was asking if they were executing a search warrant, that they thought Mr. Rogers was asking because he thought they needed one.  That was a mistaken assumption.  If they had no search but wanted J.J. Gebers, it meant there was no basis for arresting Crystal Roberts.

> c. Mr. Rogers was not told that we did not locate J.J. Gebers after a search.  The only question Mr. Rogers asked was "was anyone arrested?"  He did not mention specifically identify Crystal Roberts because he did not want to suggest to police authorities that they might be some reason they might want to arrest her.

17. George C. Rogers on December 1, 2011 transmitted to BCI at the suggestion of J. Hanna, Henry County Prosecuting Attorney, the information given him by Laura Baldonado concerning allegations by her against J.J. Gebers involving drugs and assault.  BCI in a letter to J. Hanna, copy to J. Hanna, copy to George C. Rogers dated Dec. 5, 2011 declined to proceed on the case due to limited manpower.

18. Several months prior to the December 2013 incident, Mr. Rogers had a discussion with Paul Skalf, Prosecutor for the Village of McClure regarding pursing J.J. Gebers on the assault of Laura Baldonado.

19. If Sheriff Bodenbender had bothered to seek the advice of J. Hanna as County Prosecutor, or Paul Skalf as McClure Prosecutor as to whether there would be any motive or purpose for George C. Rogers in not wanting J.J. Gebers prosecuted or apprehended he would have found out the opposite.  If he had even interviewed Mr. Rogers about any possible motive or purpose, he could have been shown and referred to others that Mr. Rogers would have the opposite purpose or motive.

20. If Sheriff Bodenbender had merely asked Mr. Rogers he would have advised that as a former prosecutor, he know that unless a person had extreme wealth, that no

3

one successfully avoids apprehension for long, and attempting evasion is stupid. He would have found that George Rogers, also had on prior occasion advised the County Prosecutor when an indictment was anticipated, to be informed, so that he could present his client for arraignment without a warrant. This is a method to keep a bond set at a low level or to be set upon the client's recognizance.

21. Even after these facts were brought to Sheriff Bodenbender's attention he still persisted in trying to get a viable indictment.

22. George C. Rogers hired legal counsel for his representation in the original case(s), in the amount of $3,840.00.

23. George C. Rogers declined to take on any criminal cases involving drugs after Bodenbender's charges on the basis that he potentially could plea bargain with a criminal defendant for adverse testimony against his attorney.

24. The front page news paper reports hurt Mr. Rogers reputation, and not only humiliated him but caused him mental distress over the emotional distress that was caused to his wife.

25. It was humiliating to have to weekly contact the probation department, as well as to get permission to leave the Henry County boundaries, and to worry when realizing he had failed to do so on occasion.

26. Having to proceed to be processed in behind barred doors at CCNO for a felony charge, fingerprinted, photographed, and DNA sample being taken was very distressing.

(Doc. No. 1 at pp. 4-9).

Based upon these facts, the Plaintiff contends a criminal complaint by Sheriff Bodenbender against him resulted in an indictment on an obstruction of justice charge which was "charge[d] maliciously, and without probable cause." (*Id.* at p. 2). The Plaintiff alleges a cause of action under 42 U.S.C. § 1983 contending "[t]here was a lack of probable cause on several elements of the offense, as set forth above, that lead to Mr. Rogers suffering a deprivation of his liberty of much more significant impact then a traffic stop." (*Id.* at p.9).

## II. RELEVANT LEGAL STANDARDS

Rule 12(c) motions for judgment on the pleadings are subject to the same standard as a Rule 12(b)(6) motion to dismiss. *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007).

4

A court construes the complaint in the light most favorable to the plaintiff and accepts as true well-pleaded factual allegations. *Daily Servs., LLC v. Valentino*, 756 F.3d 893, 896 (6th Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Factual allegations must be sufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 678. Legal conclusions and unwarranted factual inferences are not entitled to a presumption of truth. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In ruling on a motion to dismiss, a court may consider public records as well as documents attached to the motion to dismiss if those documents "are referred to in the plaintiff's complaint and are central to the plaintiff's claim." *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999), abrogated on other grounds by *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). This includes documents appended as part of the complaint and the answer without converting the motion to one for summary judgment. *Commercial Money Center, Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007) (citation omitted).

### III. DISCUSSION

#### A. Positions of the Parties

The Defendant first argues any cause of action is without merit against him in his official capacity. Second, he states the malicious prosecution claim fails as a matter of law because of the grand jury indictments appended to his answer. Third, the Defendant contends he is entitled to a dismissal of the action for failing to establish a constitutional violation and, assuming one exists, he is entitled to qualified immunity as a matter of law. Finally, the Defendant contends he is entitled to attorney fees via the Court's inherent power under 28 U.S.C. § 1927 and Fed. R. Civ. P. 11(c)(3).

In his opposition, the Plaintiff does not dispute the cause of action against Defendant Bodenbender, in his official capacity, is without merit. The Plaintiff challenges the Defendant's statement that the indictment establishes probable cause as a matter of law. Additionally, the

Plaintiff contends his Fourth Amendment rights were violated when he was charged without probable cause.

### B. Official Capacity

Regarding the viability of the claim against Sheriff Bondenbender in his official capacity, the Defendant is correct. A suit against a law enforcement officer in his official capacity is, in reality, one against the county itself. *See United Food & Commercial Workers Local 1099 v. City of Sidney*, 364 F.3d 738, 752 (6th Cir. 2004), citing *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989). As this Circuit has noted, "a county sheriff's office is not a legal entity capable of being sued for purposes of § 1983." *Petty v. County of Franklin, Ohio*, 478 F.3d 341, 347 (6th Cir. 2007). Because the Plaintiff fails to sufficiently plead a § 1983 claim against Henry County, his claim against the Defendant in his official capacity is not viable as a matter of law.

### C. Individual Capacity

Qualified immunity shields "government officials performing discretionary functions… from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

The analysis employed by the Sixth Circuit in determining qualified immunity focuses on whether a constitutional right was violated and whether that right was clearly established at the time such that a reasonable official would have understood that his behavior violated that right. *Occupy Nashville v. Haslam*, 769 F.3d 434, 442 (6th Cir. 2014), citing *Saucier v. Katz*, 533 U.S. 194 (2001).

In *Pearson v. Callahan*, 555 U.S. 223 (2009), the Supreme Court approved disregarding the mandatory analytical sequence adopted in *Saucier* and allowed district courts to "exercise their sound discretion in deciding which of the two prongs in the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." 555 U.S. at 236. While

6

the order of these questions is left to the discretion of the district court, "if either one is answered in the negative, then qualified immunity protects the officer from civil damages." *Goodwin v. City of Painesville*, No. 14-3120, 731 F.3d 314, 321 (6th Cir. 2015) (citations omitted).

The Plaintiff's cause of action is aimed at the criminal prosecution, initiated by the Defendant, charging obstruction of justice and takes issue with the Defendant's actions in "trying to get a viable indictment." (Doc. No. 1, at ¶ 21).

The Sixth Circuit recognizes a claim of malicious prosecution under the Fourth Amendment. *Barnes v. Wright*, 449 F.3d 709, 715 (6th Cir. 2006), citing *Thacker v. City of Columbus*, 328 F.3d 244, 259 (6th Cir. 2003). As noted by the Court in *Sykes v. Anderson*, 625 F.3d 294 (6th Cir. 2010), malicious prosecution is distinct from false arrest because "malicious-prosecution tort 'remedies detention accompanied not by absence of legal process, but by *wrongful institution* of legal process.'" *Id.* at 308, citing *Wallace v. Kato*, 549 U.S. 384, 390 (2007). The elements to this claim include: "first, that the defendant 'made, influenced, or participated' in the decision to prosecute the plaintiff; second, that the prosecution lacked probable cause; third, that the criminal proceeding caused a deprivation of the plaintiff's liberty apart from the initial seizure; and fourth, that the criminal proceeding resolved in the plaintiff's favor." *Martin v. Maurer*, 581 Fed.Appx. 509, 511 (6th Cir. 2014), citing *Sykes*, 625 F.3d 308-09.

Critical to the analysis in the present action is "a lack of probable cause for the criminal prosecution." *Id.* citing *Fox v. DeSoto*, 489 F.3d 227, 237 (6th Cir. 2007).

The Plaintiff complains of being charged "maliciously and without probable cause" and that the December 6, 2013 incident report by Defendant "contained many false and untrue statements." This allegation is belied by Plaintiff's characterization of these statements, as the complaint comments on the veracity of those statements:

      16. The following statement in the police incident report narrated Dec. 6, 2016, and the handwritten complaint of Sheriff Bodenbender are false.

    a. The assertion that George C. Rogers stated he was J.J. Gebers' attorney. Mr. Rogers never identified himself as J.J. Gebers' attorney. See facts of conversations above. It is perhaps understandable that a deputy or sheriff could leap to that conclusion since an attorney is asking questions as to whether they are executing a search warrant at J.J. Gebers house. Why would he be asking if he weren't J.J. Gebers attorney, but that would merely be a guess.

    b. The assertion that George C. Rogers stated that the police were not to enter the residence without a warrant. Mr. Rogers never said that "we were not to enter the premises without a warrant." It is again perhaps understandable that a deputy or the sheriff would leap to the conclusion that since Mr. Rogers was asking "if they were executing a search warrant, that they thought Mr. Rogers was asking because he thought they needed one. That was a mistaken assumption. If they had no search but wanted J.J. Gebers, it meant there was no basis for arresting Crystal Roberts.

    c. Mr. Rogers was not told that we did not locate J.J. Gebers after a search. The only question Mr. Rogers asked was "was anyone arrested?" He did not mention specifically identify Crystal Roberts because he did not want to suggest to police authorities that they might be some reason they might want to arrest her.

(Doc. No. 1 at pp. 6-7). The Plaintiff's characterizations of the incident report contradict his claim the Defendant's report contained false statements. Plaintiff's statements offer a basis for mistaken impressions as opposed to falsehoods.

    It is well settled in this Circuit that " the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause for the purpose of holding the accused to answer.'" *Barnes v. Wright*, 449 F.3d 709, 716 (6th Cir. 2006) quoting *Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002). The exception to this rule occurs "where the indictment was obtained wrongfully by defendant police officers who knowingly presented false testimony to the grand jury." *Robertson*, 753 F.3d at 616. Here, the complaint is devoid of allegations or inferences regarding false testimony to the grand jury by the Defendant.

8

Giving due consideration to the allegations in the complaint, construing them in a light most favorable to Plaintiff, along with the relevant attachments to the pleadings, I find the Plaintiff has failed to present a viable constitutional violation as a matter of law. As a result, the Defendant is entitled to qualified immunity on the § 1983 claim.

### IV. MOTION FOR RELIEF

The Defendant also requests attorney fees as sanctions pursuant to Fed. R. Civ. P. 11(c)(3) and 28 U.S.C. § 1927. Sanctions are a drastic remedy and courts are cautious about the imposition of sanctions, giving the benefit of the doubt to the signer. Sanctions are discretionary and the Sixth Circuit has cautioned against imposing them at an early state of litigation. *See Tahfs v. Proctor*, 316 F.3d 584, 594-95 (6th Cir. 2003). While I have clearly found this lawsuit ought not to proceed based upon the doctrine of qualified immunity, I in no way condone the conduct by Defendants on the day in question, as alleged by Plaintiff. As an attorney and officer of the court with a potential interest in protecting the legal rights of a client – even an apparent or related client – the conduct alleged against Plaintiff is deeply concerning. Accordingly, in this instance, I exercise my discretion and decline to impose sanctions.

### V. CONCLUSION

For the reasons stated above, Defendant's motion for judgment on the pleadings (Doc. No. 8) is granted. In addition, I decline the Defendant's request for attorney fees or other relief under Fed. R. Civ. P. 11(c)(3).

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge